The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning. We're on the record in case number 4-23-0419 People v. Brandi Roberts. Counsel for the appellant, could you state your name for the record? Jessica Arizo. Okay, thank you. And for the appellee? Adam Rodriguez. All right. Ms. Arizo, you may proceed with your argument. May it please the Court. Again, Jessica Arizo, Office of the State Appellate Defender, on behalf of Brandi Roberts. I have two issues in my briefs. Today I'll be focusing my argument on the first issue, whether or not the inventory of Ms. Roberts' bus was constitutionally reasonable, but I would be happy to take questions from the Court on Issue 2 as well. I have a feeling once you start looking in there, you're going to find something you don't want to find. Well, that's why we're here. So thanks for coming. She's suspect. We're just going to tow it because it doesn't meet our impound rules. I got another trick. Let me try. Now the body cam video here shows from the start of this stop that the officers wanted to search Brandi Roberts' bus, not merely for an inventory, but because they wanted to search for contraband. Her bus did not have a valid registration or insurance, so it was going to be towed. It was not going to be impounded. It was not going to be in the police care or custody. It was not seized by the police. It was going to be towed to a place of her choosing, whether that was her home or her friend's home. And she didn't want them to search the bus. And they conducted this inventory pursuant to what they said was their police policy, just inventory every vehicle that they tow off the street. And why was this policy not reasonable? Yes. So the inventory here was not reasonable. The inventory searches are a judicially created exception to the Fourth Amendment. And there are specific criteria that the searches have to meet in order to be lawful in the Constitution. The first one being that the impoundment is lawful. Here, there was no impoundment. The vehicle was never going to be impounded. And the case law says... Counsel, is it a requirement that it be impounded versus being towed? Well, yes. Under the case law that has created this exception, the first step is the impoundment lawful. And the reason for that is the justification for the inventory comes from the impounding. So you have to inventory it if it's going to be in the police care and custody, so that someone cannot come forward and say that the police stole their property. I think the officer made a joke about diamonds, or so that they can't say that something was planted. But here, they had no... I'm sorry, go ahead. I'm just going to ask, are you suggesting that there can't be an inventory search with a towing as opposed to an impoundment? No, I'm not saying that a policy could not exist that could be constitutionally viable. But here, it's not. Aside from the fact... Even if we put aside the fact of, you know, it's not impounded. There's two more requirements for whether or not there's a valid inventory search. The second is to... The purpose is to protect the police from being accused of claims of stolen property or planted property. It's to guard the police from danger and to protect the owner. Now, in this case, the vehicle's being towed to a place of her choosing. There's no reason for anyone to ever get on the bus. Therefore, there would be no reason ever for her to be able to say someone stole something from the bus if the police were never on the bus. By actually going on the possibility of civil litigation, because they went on to the bus in the first place. But isn't the idea, Council, that if it's towed to some other location and the owner finds something missing, they could say, hey, I think this must have been taken by the police. It was out of my sight, out of my control, under their control and direction. Isn't it really the applicable whenever they tow it and sort of take possession of it, even if it's for a shorter time? I don't think so. Because towing the vehicle to her house, it doesn't seem logical that that would require the same type of inventory that having the car on the property of the police department for however long it may be. I understand what you're saying that there's still a chance that she could say that the police had taken or something had gotten lost on the way to her house. It's much more unlikely. And if the police can show that they never entered the bus, then they would be unable, she would be unable to even make that suggestion. And the final criteria for whether or not an inventory is lawful is that the search must be conducted in good faith pursuant to a reasonable standardized police procedure and not a pretext for an investigatory search. Now here, the only thing we know about this police procedure is what officer testified to, which was that every time a vehicle is towed off the road by the police, it has to be inventory. There was no evidence presented what the inventory entails that the officer was allowed to open small containers, that the officer was able to look in places where valuables are very unlikely to be. As in the case we cited Florida v. Wells, you want to prevent this inventory from being just a ruse to look around and try and find contraband. There needs to be standardized procedures that eliminate the discretion of the officer. But we don't know what the standardized procedures here are. There was nothing testified to that he's able to go on this bus and open every container he finds. Well, isn't this case like Hundley, where the officers did go in a small container to look for valuables? There's one very, what I think is a very big difference. In that case, the officer said in his experience, I believe it was a cigarette container or cigarette case, that at the time of this case, that women often would carry their license and cash sort of with the cigarettes, maybe in lieu of a purse. So he expected there to be cash in there. There's no testimony here from Officer Hayes that opening a small silver key chain was because he other parts that he searched that don't follow that rationale either. He picked up a small flashlight and looked in the battery compartment. I apologize for interrupting, but let's think about this context. The defendant lived on a bus, said that there were many people coming on and off the bus because of the reason she had the bus and what her intent was with respect to helping people. So she certainly wouldn't be leaving her valuables out with that many people coming in and out of the bus. So under these facts and this circumstance, why wouldn't it be reasonable to hide valuables, let's say inside a compartment of a flashlight or under a cushion, under a mattress? Now we don't have the fact under a mattress, but I'm suggesting maybe the don't we? Well, sure. But going back to the silver container, which is what was found to initially have meth inside, was sitting on a counter next to the sink. And the officer didn't say, I thought maybe she was hiding her valuables in there. He said it looked like something you would have pills in or medication in. So that to me does not show that even in this context, he thought her valuables were going to be in these compartments. I mean, if you look later into the video, once the officer admits that he's switching now from an inventory to a search for contraband, one of the things he does is says, oh, empty flashlight, and he picks it up and he looks inside the battery compartment. Again, suggesting now he's searching for drugs, which only goes back to the original intent of probably why he looked in the flashlights to begin with. And the earlier part of the video was to look for drugs and not valuables. So again, just to reiterate that here, there was no rationale for this inventory when the bus was being towed and not impounded. It was being towed to her property or a place of her choosing. The police did not need to enter the bus. So there was no lawful impoundment. There was no reason to do the inventory for purposes of protecting property. And the inventory was not done via any known standardized police procedure. And the evidence on the video does suggest highly that this was a pretext for an investigatory search. Are there any further questions? So we would just ask for the reasons that I've stated here today, as well as in the briefs, that Ms. Roberts' conviction be reversed outright, where the only evidence supporting it was the result of this unlawful search. Thank you. All right. Thank you, Ms. Arizo. You'll have time in rebuttal. Mr. Rodriguez, you may proceed. Thank you, Your Honor, and may it please the Court. In this case, the trial court did not err in denying defendant's motion to suppress, where the Court found that the inventory of defendant's bus, which uncovered evidence of possession of methamphetamine, was reasonable and executed in good faith. In this case, all three of the requirements for valid warrantless inventory search pursuant to Hundley were satisfied. First, Officer Hayes testified that the multiple vehicle and registration violations meant that defendant's vehicle could not safely and legally be operated on the roadway, thus necessitating a towing of the vehicle. Because defendant's vehicle was being towed, the Edmonton Police Department policy required Officer Hayes to perform an inventory of the vehicle to report all items inside, so as to protect against any claims of damage, loss, or stolen property. And third, based on the testimony and evidence presented, the inventory of the bus performed by Officer Hayes, which uncovered the methamphetamine and additional drug paraphernalia, was reasonable and executed in good faith, and therefore complied with the strictures of the Fourth Amendment. So, Counsel, good morning. Go ahead. Thank you. How do you respond to the argument Counsel made that it was not reasonable to look for valuables in the items and in the manner that the police did in this case, that is, opening up a flashlight, looking under a cushion? How is this case different than Hundley? Well, Your Honor, I would respond to that by saying in Hundley you had a small vehicle where the uniqueness or the kind of specificity of that cigarette case was over here, given the unique circumstance of this case and the fact that the inventory was being performed on a modified school bus that effectively, you know, kind of served as a home. That implicated concerns on looking in a more broader area and engaging more wider swath, looking at the areas to identify, you know, what was there, what sort of property may exist on there to record it. As the body camera footage shows, there was a whole host of items strewn about the, not only the cabinets of the vehicle, but also underneath seats and all that. So it was absolutely reasonable for Officer Hayes in the course of performing an inventory to make sure he adequately recorded everything. And given the kind of varied matter that was surrounding the van, you know, residing in the van, I think it was absolutely proper for him to go through and make sure that he did a thorough search to prevent against any of those future claims of damage. Right. But my question, I'm sorry, maybe wasn't articulate enough. So the focus really was not just how many things he looked at or how broad the search was, but the fact that he looked inside a flashlight, he picked up a cushion, those types of actions. How were those reasonable to allow the police to think there were valuables in there? Well, I believe case laws clear that in performing the inventory search you can open closed containers. I think that issue implicates identifying valuables. And so I don't think there's anything improper on the manner in which he performed that. And as to the issue of reasonableness overall, when you're looking at the initial, I guess speaking to the third factor, funneling, conducting this inventory search in good faith, making sure that it's performed, pursuant to reasonable standardized procedures, and that it's not pretextual. I would point the court to the fact that also he's testified initially that the total length of the stop, including the stop, the inventory search, and ultimately transporting the defendant to the Knox County Jail took about two and a half hours. Additionally, he testified that the length of time to perform the stop was indicated by the fact that he was unfamiliar and didn't have as many tickets for commercial vehicles, therefore necessitating Trooper Shamlin to come by his expertise and assistance. Additionally, it took him time to record these tickets to make sure he did it properly. And the size of the vehicle that defendant, that the inventory search was being performed on, implicated the time he spent. So I think when we look at the actual vehicle itself, that as well speaks to the issue of reasonableness. Is it reasonable to spend two and a half hours on a four-door sedan? No, I would argue that it's not. Spending an hour and 40, 34 minutes based on the body cam footage to perform an inventory search of this vehicle with a multitude of different departments and different personal items and effects, I think that's absolutely reasonable given the unique circumstances of this case. When the officer said he had another trick, what was the object of the trick? I believe you're referring to Trooper Shamlin, Your Honor. I think usually a trick has some outcome. What was the point of the trick? What was that to accomplish? I think, Your Honor, I don't want to speculate. Perhaps he was looking to identify if there was another traffic violation the defendant had committed. Getting to that issue of- Was it not in the context of whether the vehicle could be impounded? That he made that statement? Yes, they were. In the course of that discussion, the trooper went and asked for an abject to identify if there was another traffic. I don't think based on the body camera footage, there was an indication that Officer Hayes had done that. So I think first, there's nothing inherently improper about that. But I will denote that I absolutely don't think we want officers to be engaging in so casually and cavalierly when they're conducting these kinds of stuff. I think it's absolutely something the state would have wanted. But the critical issue here is not what Trooper Shamlin's statements were. It's what Officer Hayes was doing because he's the individual who's performing the inventory search. And as is well aware- Did you just tell us that he wanted his colleague there to give him on that? Certainly, and how to perform and how to adequately record and identify the appropriate tickets to give the defendant, given the multitude of registration and vehicle violations that were found. But as to imputing some greater weight into the kind of errant statement that Trooper Shamlin made in the course of this, at the beginning of the body camera footage, when he's interacting and speaking with Officer Hayes, you know, under rent versus the United States, the officer's objective intent is irrelevant for purposes of a Fourth Amendment analysis. We analyze this issue under the standard of objective reasonableness and the objectable reasonableness of Officer Hayes' conduct in the course of performing the inventory search. And as the body camera footage underscores, Officer Hayes continued to diligently perform this inventory search, even after he initially identified the silver cylinder with the granular salt-like substance. Well, how do we know that he didn't continue to perform a pretextual search? I mean, you kind of are arguing in a circle there by saying it was an inventory and it continued to be an inventory. But wasn't he searching in his own words, telling us he was now searching for more contraband? Sure. Sorry, I apologize, Your Honor. I didn't mean to give an indication that it was always an inventory. Most certainly after the field testing of the granular substance, this became a probable cause search. Initially, in the beginning of his entry onto the bus and the performance of his duties recording the information, it's clear based on the body camera footage that he was performing an inventory search. Mr. Rodriguez, in that regard, can you just describe for us how it appears the search changed from an inventory search to a probable cause search? What do we see that's different? Officer Hayes testified that it did, in his mind, change from one to the other. What do we see when, in his mind, it's changed from an inventory search to a probable cause search? Well, certainly, initially, in performing the inventory search, it's sort of just a generalized search. You would see him, as an example, opening a drawer. There was some paperwork. He just kind of lifted it up to look at what was in there to just identify, oh, there's miscellaneous papers. Subsequently, when he identified and field tested the substance in it, field test positive for the search is more focused, more analyzed into searching for areas in which there may be illicit contraband. And there you see the opening of the closed container box and searching around and identifying the two pipes, one of them of which ultimately, at trial, was tested positive and found to contain methamphetamine. So there's an intentionality and a more focused analysis subsequent or following the time where he obtained probable cause to search that's different than the initial times as seen in the body camera footage, where he's really just lifting up maybe a blanket or a sheet to see what's under here to record certain items and then continue on with the search. What about the battery? Go ahead, Justice Dougherty. I was going to say, is there authority for that conversion of the purpose to say that if you are searching or conducting an inventory of the vehicle and you find contraband, are you then permitted to expand the search or conduct the search now in a different way? Is there authority for that? Your Honor, I believe case law does allow you to do that. Forgive me, I don't have it in front of me. But I think the critical issue when you're there in analyzing under the Fourth Amendment is, is it objective and reasonable to perform the inventory search in the manner in which it's conducted for purposes of an inventory search? Yes. If the transfer or the subsequently there is a discovery of illicit contraband, then most certainly the rationale for performing an inventory search has to see the way to the greater justification of probable cause that there's now illicit contraband, which then would allow a more intensive and more focused search, not solely based on performing an inventory and casually marking down issues of potential value, but now further investigation to identify illicit contraband and other evidence of a crime. So, I certainly think that the Fourth Amendment case law issue allows for that kind of compartmentalized analysis or evolving analysis as information is learned from the officer based on his knowledge training experience. And did the flashlight search come before or after the field testing? I believe it occurred before. Initially, he got onto the bus. There was, I think, a pile or there's various flashlight tubes. He looked at one, he opened it, he put it back down, and he continued on to perform. Is there any reason in the record that would support the idea that valuables are flashlights? I don't believe there's any overt statement to your honor. I think in the course of performing the inventory search, he picked that up and looked at it. I think it wasn't in regards to at least that bad of a thing. If anything, it was just a minimus to see what was inside. I don't know that there was any greater statement made that I'm going to search closed containers to find valuables. Why isn't that an insight into his thinking and his purpose for the search? Well, because I don't believe he would have known at the time what was there, your honor. I think he just entered onto the bus. There was a host of items of value, so he looked around. I think it would be different if that item had contained something, then most certainly, you know, we'd be having a different discussion. He looked at one and he put it down, continued to move on. He looked inside the battery department, right? I believe he unscrewed it and there was and so then he proceeded to go on and record information on the standard form and then went to other areas of the bus and just continue down with the search. Mr. Rodriguez, go ahead, justice, you know. Thank you. So in essence, this really was the focus of what I was going to ask about as well, and that is that you described the nature of the search changing to the police looking in containers for contraband, but then as Justice Doherty pointed out in his question, we have pre-finding of the meth, the police looking not only in the silver container, the small silver container on the key ring found near the sink, but also this flashlight battery compartment. So I'm not sure, maybe you can explain how that is different from looking inside a container. Those are containers that was done pre-finding the contraband. So I don't see how the search changed and was an exploratory search afterwards and not an exploratory search prior to finding the contraband. Well, I think, Your Honor, I would point the court to the difference in the locations. It speaks to one thing. There's a difference between a pile of flashlights that were looked at just to see what was in them, at least in the case of this discussion, one, and then subsequently in plain view in a kitchenette area, there was the silver cylindrical container that he opened. So I think there's a difference as well in where the search occurred relative to the ultimate inventory search of the home or the RV, excuse me. There's a use and a connection to the kitchen that perhaps requires or necessitated a greater confirmation of what was contained in that silver cylinder than there wasn't just looking in a pile. So I think looking at one and then continuing on speaks to the issue if he was merely looking at these flashlights as an initial aspect and then shifted focus to other areas. The area, I think, has a connection to the more intensity of the search or opening the closed container that can't be separated or just disregarded in the circumstance. Mr. Rodriguez, when you were earlier describing the distinction and what you would see in the body camera footage where Officer Hayes says he was conducting an inventory search versus when it became a probable cause search and you described what you considered to be the difference in the manner of the search, that taking a part of the flashlight would seem to more fit your description of the probable cause type search than the inventory search. Would you agree or if not, can you explain why not? I would agree, Your Honor. I think it would have been appropriate at that time to go back and look at all of those flashlights to identify if those areas contain any illicit contraband, but that's not what Officer Hayes did in this case. I think the issue of looking at the flashlight initially, as indicated, was the minimus. I think ultimately when there's that finding in the field testing and it allows for more intense search, certainly at that point there may have been a change or he may have been allowed to look more aggressively into those containers and other areas, but that didn't occur in this case and I don't think the body camera footage shows that he went back at any point to look at those again. I did want to touch on a few items regarding statements the defendant makes in their brief regarding the policy rationale. At one point in the defendant's brief, page 13, the defendant attempts to cite the City of Abington Municipal Code to state that Officer Hayes was not in compliance with the police department's toll policy. That representation is an error and it's an error for three critical reasons. First, the information the defendant cites is outside of the record. It was never introduced at trial so it's improper to bring it up for the first time on appeal. Second, Officer Hayes was never cross-examined or showed the City's Municipal Code and asked how that had any relevance to his decision to tow the vehicle. And three, the City's Municipal Code is not the same as the police department's internal policy regarding procedures and how officers are to conduct tows and inventory searches conducted pursuant to a tow. Officer Hayes credibly testified that about the tow policy and case law is clear, specifically People v. Fellers and People v. Mason, that that testimony regarding the policies was sufficient in and of itself to establish he acted pursuant to the policy. Ultimately, in this case, the trial court found that the timing of the stop was reasonable given Officer Hayes' need for assistance in writing the tickets as indicated and observed in the body also found that the inventory was performed in good faith and was not pretextual because even after Officer Hayes found the metal cylinder that had that dreadnought substance that field tested positive, he continued to perform the inventory search, recording various items that he identified. So therefore, it would be the people's position that all of the humbling factors were satisfied and this was a warrantless, valid warrantless inventory search of the RV. Do your honors have any other questions regarding issue one at this time? I don't see any. Thank you, Mr. Rodriguez. Ms. Arizo, rebuttal argument? Initially, Attorney Rodriguez said that he believes the case law says that officers can cite it to Florida v. Wells. In that case, the Supreme Court found specifically that because the police department did not have a rule that said that the officers could open containers, that that search where they opened, I think it was a suitcase that was found within the car, was not constitutional. So there's not just a blanket policy that all officers can open containers in an inventory search. It needs to be part of a standardized procedure, which goes back to my earlier argument that here, there was no testimony that that's the procedure of the Edmonton Police Department, that they open containers during their inventory search. And the reason for the standardized procedure is so there's not this use of their discretion when they think they might find something, so they're just going to open a container like a flashlight. The other thing I wanted to mention was, back to the question about the Trooper Shamblin's comment about the being a trick, it was indeed a trick in order to impound the vehicle. He was looking for specific insurance violations, which would allow them to impound the vehicle. Regarding what the council just said about the citation to the municipal code, that was nothing to do with whether or not the tow policy was valid, but rather just to show that this vehicle couldn't be impounded, which I think that's pretty well set in this case, that they weren't able to impound this vehicle, they were merely towing it. And that was just the reason, just to support that yes, what the officer said about not having grounds to impound the vehicle was true based on that code. I think that's all I had. So if there are no further questions, I'll say thank you and ask that the conviction be reversed. Thank you. All right. Thank you, Ms. Rizzo. Thank you both. The case will be taken under advisement and we will issue a written decision.